Staples, J.,
delivered the opinion of the court.
This is an action of covenant brought in the corporation court of Norfolk by Wm. J. Bidgood against the Brooklyn Life Insurance Company of New York. The plaintiff’s original declaration contained two counts, to each of which the defendant demurred. The demurrer to the first count was sustained, and that to the second was overruled. The plaintiff then filed an amended declaration containing three additional counts. The defendant demurred to the whole declaration, and to each of the three counts. It also demurred to a part of each of the three counts, and pleaded to the residue. It also filed seventeen special pleas in writing: upon which issues were joined by •demurrers, special and general replications. This *292 court has laboriously looked through all this mass of special pleas, demurrers and replications, only to see that every defence they suggest could have been made, and the merits of the case fully presented, upon the pleas of covenants performed, and non damnijicaius.
The points of controversy are few and simple, turning almost exclusively upon a proper construction of the language of the covenant. On the 25th day of April 1870, the defendant appointed the plaintiff its general age iff for that portion of the state of" Virginia embraced and bounded on the south by the James-river and the Blaekwater river, on the west by the Blue Ridge, on the north by the Potomac river, and on the east by the ocean. It being understood that his duty as such general agent shall be to solicit applications for life insurance policies, to deliver the same, and to collect the premiums thereon, or any other moneys for said company; also to constitute sub-agents throughout his whole field; such sub-agents being under the pay and authority of the plaintiff.
And it was further agreed that if the aggregate of commissions earned by plaintiff on policies taken by himself and by the margin of his commission over that of sub-agents on their work, shall not amount to-the sum of $3,000 for the first year, the company will make up the -amount to that sum for said year. Purther in consideration of the terms and agreement mentioned, and territory granted, the plaintiff agreed and promised to “devote his time, services, energies and abilities to the interest of the company throughout the whole of the aforementioned territory, exclusive of every other life insurance company or other business, faithfully, honestly, industriously.” There *293 ■are other provisions in the contract, but they are not very material to the present inquiry.
The defendant, on the 26th of October 1870, revoked the agency and discharged plaintiff from its employment. It had, however, in the meantime paid him the sum of $1,500, one-half of the agreed compensation for a year. The plaintiff' brought this suit for the balance of $1,500, claiming that he was discharged from the service of defendant without sufficient cause.
The first ground of contention relates to the provision of the contract for the appointment of sub-agents; the defendant insisting that the plaintiff failed to make such appointments according to the true intent and meaning of the contract. The plaintiff admits that he appointed agents only for a very small number of the counties embraced within the boundaries of his territory. According to his own statement, he appointed seven sub-agents for some half-dozen counties lying contiguous to the city of Norfolk. He made no appointments for the region of country bordering on the state of North Carolina, or for the tier of counties at the foot of the Blue Ridge, or those on the Potomac, or for the cities of Richmond, Petersburg, Lynchburg, Danville, Charlottesville, and the section of country surrounding them. He did not even attempt to make such appointments. The reason for this failure is, that the contract only required him to establish such agencies when and where he was directed by the officers of the company; and that he was not at any time directed by the company to appoint such agents.
We are of opinion that the covenant does not admit of any such restricted interpretation. The provision in question is, that the duty of the plaintiff, as such ■general agent, shall be to solicit applications for life insurance policies; also to constitute such agents *294 throughout his whole field; such sub-agents being-under the authority and pay of the plaintiff. The defendant, located in New York, could scarcely be expected to know when and where such agents might be most judiciously appointed, and in what localities they could most successfully operate. One of the chief' objects in appointing a general agent, in whom the defendants could repose entire confidence, was to perform this work, to perform it industriously and faithfully. There can be no doubt but that much of the profit expected by defendant from this arrangement was to be derived from the appointment of these sub-agents, judiciously selected in proper localities, and having constant communication with the people. It is difficult to imagine why the plaintiff' should have been appointed a general agent at a'salary of $3,000, unless, it was that being a resident of the state, acquainted with the people and the business of insurance, he ■would understand when and where these agents should be appointed. The plaintiff himself so construed the-contract in the beginning. He not only appointed agents for the counties contiguous to Horfolk without direction by the company, but according to his account he offered appointments to a hundred others in. that locality. We are relieved of any inquiry in this-case as to the extent and nature of the plaintiff’s duty in making these appointments, because his claim is not that he had made them, but he was not bound* to do-so until directed by the officers of the company. We are cléarly of opinion that this is not a proper construction of the contract, and that the plaintiff has failed in the performance of this part of his covenant..
The other provision of the contract, which is the subject of controversy here, is that in which the plaintiff undertakes to devote his time and services to the *295 interest of the company, throughout the whole of the territory laid down as the limit of his operations. And here again we must rely upon the plaintiff’s own account. His statement is, that he traveled in Norfolk, Princess Anne, Nansemond, Southampton and Isle of Wight; his residence being in Portsmouth at the time. It is not extravagant to say that he could not have been occupied two months altogether in the canvass of these counties. He went no where else. None of the large cities and towns were visited by him. No part of the Valley or the Piedmont section, or the region on the upper James, was ever seen by him; but a few counties which no doubt, had before been thoroughly explored embraced the area of his labors. The result of his entire operations, including agents, was a return of twenty-one policies, yielding to the company premiums amounting to $423, for which it incurred an expense of $1,608.78 cents, of which plaintiff received $1,500, and over $100 paid medical fees for examining applicants.
The excuse given by the plaintiff for his failure to canvass the territory assigned may be stated in his own words. “I did not go to distant parts of the state because the company did not pay my expenses. I expected orders from the company to travel to distant parts of the state within my limits, but received none.” His view of the contract seems to have been, that he was under no obligation to travel unless directed by the company; and not even then, unless his travelling expenses were paid by the company.
The provision of the contract is, that he is to devote his time and services to the interest of the company throughout the territory mentioned. Nothing was said either in reference to instructions from the company or the payment of expenses. It is true there is, *296 in another part of the writing, an agreement to pay actual railroad or steamboat fares of the plaintiff, when travelling by order of the officers on business of the company. But it is clear this was only intended to apply to occasions when the company required the performance of some special service not embraced in the regular routine of duties stipulated in the contract; and even then the obligations extended no further than the payment of the railroad and steamboat fares. The insertion of such a provision is of itself very persuasive evidence that the parties did not contemplate the payment of the plaintiff’s expenses by the company incurred in the discharge of his regular duties. Inasmuch as the plaintiff was required to appoint sub-agents whose pay depended upon the commissions, and as a very large territory was assigned him as the field of his business, the company guaranteed a compensation of $3,000. With this he might reasonably expect to pay all his expenses, and at the same time realize a liberal remuneration for his services. If this was not the whole object of the salary, it is very difficult to understand how the com-, pany was to be indemnified for an outlay greater than he compensation paid to nine-tenths of the officers of the state of Virginia.
The idea that the plaintiff was to wait for instructions, as has been seen, is utterly inconsistent with the whole scope of the contract and the end and aim of his appointment.
In answer to all this it is said the company did not revoke the agency upon the grounds here stated, but, as its letter will show, because the small number of policies would not justify it in longer continuing the agency. At the time that letter was written, the company, it is reasonable to suppose, did not and could not *297 •know how far the plaintiff had failed in the performanee of his contract. It could not know what counties he had or had not visited, or how many or few agents he had appointed. It could only judge by results; and those results plainly showed that the •arrangement was productive only of great pecuniary loss. The testimony of the plaintiff explained in a great measure the causes of the failure, and fully vindicated the justice of the company’s action in revoking the agency. If the company was ignorant of the plaintiff’s failure to perform his duty, it was because he had not disclosed it. Their failure to assign his breach off the contract as a ground of removal cannot entitle him to damages, if in fact he is not so entitled. The true question is not whether the defendant assigned a sufficient reason for the discharge of the plaintiff, but whether his conduct was of a sort to justify such discharge; and if it was, it matters but little in the decision of the issue joined whether the defendant was or was not at the time apprized of such conduct. It is said again, that the defendant, at the time of the revocation of the agency, proposed to renew the appointment of the plaintiff’. The proposition to renew the •appointment was, however, based upon the condition that the plaintiff would act without a fixed compensation, only receiving such commissions as the business might afford. Such an arrangement would, of course, involve no 1'oss to the company. Had the company, therefore, known at the time the plaintiff had not complied with his contract, no unfavorable inference could be drawn from the offer to continue the agency.
IPor these- reasons, we are of opinion, the plaintiff is not entitled to receive any further compensation, and that the defendant was justified in revoking his agency. As the whole matter of law and fact was referred to *298 the judge helow, and as all the evidence is in the record, final judgment may now be entered for the defendant. This view renders it unnecessary to consider the alleged errors of the court with respect to the pleadings. If such errors were committed, they were-to the prejudice of the defendant; but as the judgment here is in its favor upon the merits, these errors are,, of course, immaterial.
The judgment of the circuit court is reversed, and judgment to be entered for the defendant.
Judgment reversed.